IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEVEN WAYNE HARRIS, #292863
        Plaintiff       :

        v.        : CIVIL ACTION NO. PJM-05-2689

DR. RAAZAK ENIOLA     :
        Defendant

### MEMORANDUM

On September 27, 2005, Plaintiff, then and presently incarcerated at the Eastern Maryland Correctional Institution ("ECI"), filed a civil rights action pursuant to 42 U.S.C. § 1983, seeking money damages and alleging that he was not provided adequate medical treatment for a broken arm sustained as a result of a fall while playing football on August 17, 2005. (Paper Nos. 1 and 4). Now before the Court is Defendant's unopposed[1] Motion to Dismiss or, in the Alternative, for Summary Judgment (Paper No. 11), which shall be construed as a motion for summary judgment. No hearing is needed to resolve the remaining issues in this case. *See* Local Rule 105.6 (D. Md. 2004).

**Standard of Review**

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party,"

---

[1] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Clerk on January 4, 2006, informed Plaintiff that: Defendant had filed a dispositive motion; Plaintiff had seventeen days in which to file written opposition to the motion; and if Plaintiff failed to respond, summary judgment could be entered against him without further notice. (*See* Paper No. 12). Plaintiff has chosen not to respond.

then summary judgment is inappropriate.  *See Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other  facts immaterial." *Celotex*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence.  *See Anderson*, 477 U.S. at 256.

In *Celotex*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324.  However, "'a mere scintilla of evidence is not enough to create a fact issue.'"    *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North*

*Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

In order to state a constitutional claim for denial of medical care, Plaintiff must demonstrate that Defendant's acts (or failures to act) amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In essence, the treatment rendered must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851. Reckless disregard occurs when a defendant "knows of and disregard an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms, *see Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998), and mere negligence or malpractice does not rise to a constitutional level. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986). Further, "'[B]ecause society does not expect that prisoners will have unqualified access to health care,' the objective component of an Eighth Amendment claim based on deprivation of medical attention is satisfied only if the medical need of the prisoner is 'serious'". *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "[A]n injury or condition is 'serious' only if it is 'life threatening or poses a risk

of needless pain or lingering disability if not treated at once.'". *Anderson-El v. O'Keefe*, 897 F. Supp. 1093, 1096 (N.D. Ill. 1995) (quoting *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991)). In determining whether an alleged deprivation of medical care amounts to a constitutional violation, courts must consider the severity of the medical problem, the potential for harm if medical care was denied or delayed, and whether such harm actually resulted from the lack of medical attention. *See Burns v. Head Jailor of LaSalle County*, 576 F. Supp. 618, 620 (D.N. Ill. 1984) (citation omitted).

**Analysis**

The parties do not dispute that Plaintiff was brought to the dispensary on August 17, 2005, after sustaining an injury to the right arm while playing football. A nurse found swelling above the wrist and noted good pulses and blood flow to the hand and an ability to wiggle the fingers a little. The nurse wrapped the arm in an Ace elastic wrap, provided a sling, and gave Plaintiff an ice pack for swelling and Motrin for pain. Plaintiff was advised to return to the infirmary immediately if his fingers turned blue or became numb, or if the level of pain increased. (Paper No. 11, Exhibit A, ¶ 3).

Plaintiff was examined the following morning by a physician's assistant, who ordered an x-ray and requested a bottom bunk for Plaintiff. Later that day, the physician's assistant evaluated Plaintiff again and admitted him to the infirmary to control his pain. (*Id*., Exhibit A, ¶ 4).

An x-ray taken August 19, 2005, showed displaced fractures of the right radius and ulna, the two bones in the forearm. An open reduction and internal fixation ("ORIF") surgery was scheduled for August 23, 2005. Plaintiff's arm was re-splinted and ice packs, elevation, and pain control measures were undertaken. (*Id*., Exhibit A, ¶ 5).

On August 23, 2005, Plaintiff was taken to Peninsula Regional Medical Center, but surgery

was delayed after he informed staff that he was a hemophiliac. Defendant Eniola advised Medical Center staff that Plaintiff was not a hemophiliac, and surgery was performed on August 25, 2005. Plaintiff returned to ECI and was readmitted to the infirmary for observation of the arm and hand. (*Id.*, Exhibit A, ¶¶ 6-7).

On September 1, 2005, Dr. Cuomo reexamined Plaintiff, removed his sutures, and applied a cast to the arm. Plaintiff also received a sling for comfort and Motrin and Tylox (a narcotic analgesic) for pain. (*Id.*, Exhibit A, ¶7). Dr. Cuomo recommended that Plaintiff be placed on bed rest and allowed to eat in his cell. (*Id.*, Exhibit A, ¶ 8).

The following day, Plaintiff was discharged from the infirmary and returned to his housing unit. A physician's assistant ordered bed rest, feed-in, and requested a bottom bunk for Plaintiff for a month. She also ordered a follow-up visit with Dr. Cuomo. (*Id.*, Exhibit A, ¶ 9).

On September 12, 2005, Plaintiff submitted a sick call request complaining of pain in the right arm and hand and requesting to be kept on bed rest and feed-in to avoid further injury pending his upcoming release. He was examined the next day and found to have no swelling and good range of motion in the right elbow. Tylenol and Motrin were continued for pain. The following day, Plaintiff complained to corrections staff that he was denied participation in the Relay for Life Walk-a-thon because of the order that he remain on bed rest. (*Id.*, Exhibit A, ¶ 10).

Plaintiff was again examined by Dr. Cuomo on September 15, 2005. It was determined that he was doing well. Bed rest was discontinued, and Plaintiff was told to participate in normal activities, with the exception of lifting with his right arm. A velcro wrist immobilizer was ordered to aid Plaintiff when performing activities. Physical therapy for range of motion exercises for the right wrist and hand also were ordered. (*Id.*, Exhibit A, ¶ 11). Plaintiff's September 17,

2005, sick call request that he not be handcuffed or restrained on the right hand was resolved when corrections staff indicated he would be cuffed in front, rather than from behind. (*Id*., Exhibit A, ¶ 12).

On September 23, 2005, Plaintiff submitted a letter, directed to the Pharmacy, requesting the velcro arm brace, physical therapy, and a "medication hand ball" which he claimed were ordered by Dr. Cuomo. A nurse reviewed the request and advised Plaintiff that Dr. Eniola would review Dr. Cuomo's report upon receipt and determine what needed to be ordered. Dr. Eniola discontinued all restrictions for Plaintiff at the end of September, 2005. (*Id*., Exhibit A, ¶¶ 13-14).

Plaintiff received a wrist splint on October 5, 2005. The next day, Dr. Eniola examined Plaintiff, who reported no pain, swelling, or interference with daily activities following surgery. The wound was well healed and range of motion was satisfactory. Dr. Eniola determined that Plaintiff did not require physical therapy. Medical staff provided Plaintiff with information about exercises he could do on his own to strengthen his arm and wrist. Plaintiff was referred to Dr. Cuomo for follow-up and to assess whether the velcro brace was still needed. (*Id*., Exhibit A, ¶ 16).

On October 28, 2005, Dr. Cuomo re-examined Plaintiff and found a well healed incision and full range of motion of the arm and wrist. Further restrictions were lifted and the surgeon advised another x-ray in six weeks as a final check on progress. (*Id*., Exhibit A, ¶ 17). On December 22, 2005, Dr. Eniola examined Plaintiff and concluded that no further follow-up or intervention was needed because the fracture had healed without complications. (*Id*., Exhibit A, ¶ 18).

Nothing in the record suggests that Defendant violated the Eighth Amendment by failing to respond adequately to Plaintiff's medical problem or that the treatment received was delayed, excessive, or unavailing. Indeed, it appears that Plaintiff received appropriate medical care and as

a result achieved an excellent result following his injury. Accordingly, Defendant is entitled to summary judgment in this case. A separate Order shall be entered in accordance with this Memorandum.

February 1, 2006

                              /s/
                PETER J. MESSITTE
     UNITED STATES DISTRICT JUDGE